2-19-0215 Sandra Rojas v. Sandra Mendoza v. Dr. Sandra Martell v. Lt. Col. Mr. Michael J. Ackes. Mr. Noel W. Stericot. Good morning, counsel. Mr. Ackes, whenever you are ready. Good morning, Mr. Anderson. And may it please the Court, Michael Ackes, on behalf of the defendants and colleagues. The several certified questions before the Court this morning are generally concerned with whether the Court should apply the time-tested and well-recognized Title VII employment discrimination rubric to the claims of workplace discrimination in this case. Well, you know, the Title VII covers employment. That's what it's designed to cover. This covers moral conscience and religious freedom. How are they the same? They are the same in the sense when they apply to claims of workplace discrimination. I freely concede that both the Conscience Act and the IRFRA apply broadly to non-employment claims, similarly to the Human Rights Act. There's sections of the Human Rights Act that also apply broadly to other forms of discrimination. Do you have any case law that says that? I'm sorry? Do you have any case law that says Title VII should be applied to this scenario, this statute? No, I don't. This is a case of first impression from the – I think that the parties would agree, the lower courts certainly agree, that there have not been any reported decisions out of any of the courts in Illinois addressing how to apply either of these claims, specifically the Conscience Act claim. So it's your position that they do apply to the same issues? Again, Title VII to me appears to prohibit discrimination in employment in the workplace. Right of Conscience deals more with health care context. So why should they be read together? Well, because the Right of Conscience Act touches discrimination in the workplace. Specifically, the plaintiff here is making a workplace discrimination claim in much the same way a plaintiff would be making a claim under the Human Rights Act that she was discriminated against because she was female or Hispanic or Catholic, except in this case, the protected – in this case, the protected class is her conscientious belief that aiding in the distribution of birth control or making abortion referrals violates her conscience, so that – Wait, isn't her protected class her religion? I'm sorry? Isn't the protected class her religion? No. If the protected – well, if the protected class is her religion, I think the statute may have some problems surviving a challenge based on the Establishment Clause. I think in order to do that work, to not have the statute be unconstitutional, the protections have to broadly be based on conscience, conscious belief that may arise out of one's religious beliefs, but also may arise from some other place in one's heart where religion typically comes from. And that work is coming from – and I'm sorry, I can't give you the name of the case right now, but I'm sure counsel can – a Supreme Court case dealing with conscientious objections to the draft back in the Vietnam era. Well, the appellant states that she doesn't have a lot of the protections because she is a state or a county or a government employee versus a nongovernment employee. Does that make a difference? I don't understand. Maybe if you could raise the question. They indicate something to the effect that she can't raise some of these arguments because she's working for this protection. There'd be the protection in which act? I think the judge kind of admonished them and said that's just the most ridiculous argument. Oh, the judge admonished me, Your Honor. Oh, was that you? We hate to bring that up. I'm not pressing that argument here. You make the argument in your brief, but you're not pressing it here, right? It's outside – it's certainly outside the scope of the questions, I think. Right. It can be developed in a way which would probably come across as less hostile. Yeah. Counsel, let me ask you this. Yeah. Is it your position that the act requires the plaintiff to establish an adverse employment action? Yes, it is. That is our position. So since it's not in the plain language of the statute, let me ask this. On what basis do we as a judiciary read that requirement into the language of the statute? I think where that requirement is coming from, and I think what's doing a lot of work in this statute, is the word discriminate. And in the employment setting, which is where this case is, we've established that the statute does apply to other instances outside of employment, but here specifically it's applying to an employment discrimination claim. In the employment setting, the Illinois courts generally, in several types of guidance, all following the gold standard for these type of workplace discrimination claims, which is Title VII, have followed the Title VII rubric, which requires the discrimination. What discrimination means in that context is that the employer took an action against the employee that was materially adverse because of some protected class or characteristic. So the discrimination, you're saying, has to be read into the phrase licensing, hiring, or promotion. The word discrimination is in the statute, Your Honor. I know that, but it talks about, ostensibly it says, not including or not limited to licensing, hiring, or promotion, transfer. Transfer. Transfer. So that's the question. Does the mere fact that somebody is transferred, does that fall within the ambit of the statute? You say, you seem to be saying it must show something beyond that. No. No? Well, is a transfer itself materially adverse? Not necessarily. And the way that the question was framed by the parties with the assistance of Judge Doherty was whether a transfer is necessarily discriminatory. Or is a transfer in and of itself discriminatory? In and of itself discriminatory. And, again, we get guidance from the work that the courts have done in discrimination claims in other contexts. Where the paradigmatic example of a materially adverse or discriminatory act is things like a termination or a pay cut, a suspension, a reduction in hours. Well, that's a little more obvious, isn't it? I mean, if somebody is terminated, that's clearly an adverse act. Right. And those are the obvious. But this was a transfer issue, wasn't it? Right. So a transfer. And what the courts have generally done with transfer is require that the transfer have some material consequence. So the Seventh Circuit, in applying Title VII, has gone as far as saying a transfer is not materially adverse unless it's, at the end of the day, a demotion. Not necessarily a demotion from manager to non-managerial. But, in essence, a demotion. For instance. What would the harm have been to allow her to remain in an area and not rotate as the others? Well, what was happening was the clinics were consolidated. Correct. So everyone was going to have all the duties from all the clinics. So it wasn't simply a matter of not rotating her into that clinic. Those duties were being combined. And the legitimate expectation of the employer at that point was that all the nurses were going to be able to provide all the health care services  Right. That's correct. So I guess then, if you think about it, what would the fear be that others would say, wait a minute, I don't want to be cross-trained, or they would raise some religious objection or something? Is that what the fear was? I'm trying to understand what was the fear in allowing her to do her job in light of her religious beliefs? Well, I mean, the problem is she was objecting to, again, to borrow a term from other types of discrimination law, essential functions of her job. So the concern with not allowing for transfer or accommodation is that you end up along a path where the employees essentially have a veto over the type of health care that's being provided, because if you're in a situation with an employee at a health clinic, a nurse at a health clinic who can't provide this valuable service to our citizens. All right. So your position is, rather than spend all your time on this, that a transfer, as I understand it, does not in and of itself establish discrimination. Correct. Let me ask you this. Okay. Title VII explicitly provides for a reasonable accommodation defense in the text of that statute, correct? It does, Your Honor. The plain language of the Right of Conscience Act does not report to contain this defense. So, again, on what basis would we read that into this particular statute? I concede that it does not. Then why would we read it into it? Again, the word in the Conscience Act, the word discrimination, is doing a lot of work here. It's our position that when an employer takes steps to reasonably accommodate a consciously held belief, that that's not discrimination. If the accommodation is reasonable, we are not materially affecting or it's not materially adverse to our employee. It's a way to honor that employee's consciously held belief, and still make sure we have an employee that we can give work to do and to keep the employee employed in the health care business. But to phrase it another way, I suppose you could say it this way, which is what the legal requirements talk about. You seem to be saying that there could be circumstances where if you held that the transfer was, in and of itself, a violation, and you might conjure up a business that has only one or two employees, the business would end up closing down. That sort of arguably reaches an absurd interpretation. Is that what you're saying? That's exactly what I'm saying. I'm saying that the intent of this act could not have been to hamstring employers in this way and to allow employees to have a veto over the types of health care services that are provided. I think the delicate balance that this statute is walking is honoring someone's consciously held beliefs while still recognizing that... The reality of the workplace? Well, the reality of the workplace and the reality that health care providers have the right to provide health care services to individuals that may offend some people's conscience. It's still a fact that those are legal health care services. Citizens are recognized to have a right to those services. And local governments have a right to provide those services. You see, my time is up. You can finish the answer, and then I have another question. You know what? I totally lost my train. That's why I didn't ask you the question when it came up, because I didn't want you to lose your train. Well, let me ask this question. Aren't you doing sort of a balancing? There's a compelling government interest to provide this particular service, correct? This particular medical service. Correct. And there is also a compelling interest to respect the consciousness or the conscience, rather, the moral conscience of the employee. So isn't it more a balancing test than an adverse employment reasonable accommodation test in terms of constitution? Well, I guess I want to clarify if we're talking about, I mean, there's no constitutional claim being made in this case. The claims are statutory. Right. I understand that. But wouldn't it be more like that constitutional claim than it would be a Title VII claim? Because Title VII is just this happened, it was adverse, if it can be proven, but we've accommodated. We've made a reasonable accommodation. That is how you want this to proceed. This seems to be a bit more complicated than that, doesn't it? Well, I would say that Title VII religious discrimination claims do a lot of the same work and function. But if the legislature had wanted to follow Title VII here in Illinois, they could have put those terms into the statute, couldn't they? They certainly could have. Or they could have referenced Title VII in some fashion. They usually don't reference when they steal. But assuming they had the opportunity, they could have used the same language, they could have used the same protocol. Well, I would say that at the time this statute was adopted, Title VII was the well-recognized gold standard for analysis of workplace discrimination claims. But it has been amended, hasn't it, since then? Since Title VII? No, the Right of Conscience Act in Illinois. I believe it's been amended since the events of this case. I'm not super familiar with the amendments. I don't believe they would affect this case. Are there any challenges going on right now regarding those amendments that you're aware of? That I'm aware of, no. Not to say that there isn't. I certainly don't follow every legal development in this area. Okay, Counselor, you'll have an opportunity to respond if you choose. Thank you, Your Honors. I've got my glasses on. I still can't see Mr. Steric. That's it. Good morning, Your Honors. May it please the Court, my name is Noel Steric. I represent Nurse Sandra Rojas. For 18 years, Nurse Rojas had the privilege of working at Winnebago County Health Clinic. She lost that privilege solely because she exercised her statutorily protected health care right of conscience. She was not forced into a transfer, was she? Our position is that there wasn't any transfer. When we deposed Dr. Martel and the HR director from Winnebago County, we learned that she actually had no authority to transfer. So she referenced two jobs that the county had available, a food inspector position, which was temporary and part-time, or a pediatric nurse. Basically, she would still have had to apply. She also referenced a position where my grandfather stays at the nursing home. So these were jobs that she would have had to interview for. All Ms. Mendoza knew, or Ms. Rojas knew, now that she's been married, was that she could no longer work at the clinic. And that's in the letter, the June 30, 2015 letter Dr. Martel gave her saying, you can no longer work here. And she even references why she can no longer work here. Now, some of these facts about that will be fleshed out at the trial. But we're here on the certified questions. So let me ask you an issue that's hanging in the air, the counsel referenced. Obviously, it's your position, as I read it, that the transfer in and of itself causes a violation of the statute, correct? Yes. And no need to get into show there's some discriminatory purpose. Is that your position? That is our position. We read the – go ahead. No, go ahead. No, we read the Conscience Act as securing a health care professional's right to exercise their right of conscience, free of any concern that in doing that they're going to lose their job, they're going to lose privileges. The purpose, to Justice Hutchinson's point earlier, of the Conscience Act, is far more specific, far more tailored to the health care context than Title VII or any human rights act. No, we understand the position and the sincerity of your position. There's also a well-established body of law, as you know, that when we interpret a statute, we must interpret it in a way that it would not produce absurd results, as that term is used, correct? Sure. It's a well-established rule of statutory construction. It alludes to the fact that you could have a business that only has a couple of employees. If the employer was prohibited from ever transferring an employee who's legitimately exercising their right of conscience, you have a tension between the different purposes of the statute. You could contemplate a situation where the employee would be required to sit there and not perform any job duties, and the business might close down. So my one question to you is, did the legislature contemplate and authorize that result? Based on the plain language in the statute itself, which is what we're going on, our argument is no. It shall be unlawful to transfer somebody by reason of their exercise of right of conscience. Going back, I think the only other way to read this to avoid that absurd result would be to say that transfer, just like promotion or hiring, is actually modified by the earlier word discrimination. So, in other words, we would have to show that, even if you fall back off of our position based on the plain language, we could still show that the transfer was discriminatory, and there's no reason to look to Title VII for that. I'm not sure I'm getting what you're saying. Is your position was coming in, at least, that the transfer, ipso facto, in and of itself, would create a right of action under the statute, correct? Yes. Now, being confronted with the situation and seeing that this could perhaps, in some unusual circumstances, cause absurd results, are you backing off of that position? No. I think we can still make the argument under the plain language, and I don't think that this Court has to modify it for that extreme situation because I think that's what the statute provides, and the legislature can make that change if it is leading to difficult results for employers. This Court, just like Judge Doherty recognized and exercised a great deal of judicial restraint, saying, look, we've got a whole body of case law in Title VII, and it's tempting to go there because there's more cases there. We have only a handful of cases in Illinois where courts have wrestled with the Conscience Act. Maybe that's because the Conscience Act is strong and people have been abiding by it. In this case, there's no reason to go there. And if the legislature needs to amend it, and to answer your question earlier that you asked, opposing counsel, there are some cases that I'm actually involved in where the amendments to the Health Care Act and Conscience Act are being challenged. That's what I thought. Where do they stand? They're both enjoined currently. Judge Pallmeyer in the Federal District is considering a permanent injunction. The briefing has been done on that. And the other one is Judge Doherty actually issued a preliminary injunction, which has stayed pending resolution in the Federal District. Injunction against what? The enforcement of the amendment, which requires that in the event that you cannot perform a health care service pursuant to your right of conscience, you nevertheless still have to speak to the benefits of that service and refer to that. So those are two pregnancy cases. But it doesn't really deal necessarily with transfer of the situation here, does it? No, it doesn't. And both of those amendments were put in place after the facts of this case. Now, Judge Doherty, in answering that question, he held that he not ñ that the violation ñ the mere transfer does not in all cases create a right of action, right? That's ñ yes. He did not view it as ñ yeah. He did not view it as a strict statute. Is that absolute? Okay. Yeah. And just to address one thing, opposing counsel referenced that the parties in the court bring these questions. Our position ñ we didn't participate in the bringing of these questions. That was between the defendants and Judge Doherty. We actually opposed it for the reason being that there was no court in the last 40 years that has ever done what opposing counsel has done. And one of the things that I think is key to note in what my opposing counsel's reference is, he keeps going to this ñ the word discrimination is doing a lot of the work. Well, can a state enact a law and use the word discrimination without automatically bringing into play Title VII's definition? Anytime a state enacts a law that says discrimination, it doesn't mean that they meant discrimination as defined by Title VII. I mean, the three other questions that we're dealing with here goes straight to the point, why are we looking to federal law? In fact, in this case alone, we went through an entire round of summary judgment briefing before Title VII was even brought to bear. It was only until they realized that they weren't going to win on summary judgment that all of a sudden they're like, well, let's go change the analysis. And the reason why we keep going back to this gold standard for discrimination, Title VII is frankly a gold standard for employers, because there are very strong protections for the employers. And it defines discrimination in much the same way as the Human Rights Act in Illinois, which provides a definition of religious exercise that clearly provides, and this gets to the last question, the last three questions, I mean, the last two, three and four, that defines religious discrimination as you can make your private patient showing that the employer can get out of liability as long as they show a de minimis burden on the employer. None of that's written in here. There's no authority that opposing counsel cited that would justify looking beyond the plaintiff's terms. Well, let me ask you this. It's clear. You're right. The legislature was clear that the intent is to protect the right of conscience. I don't know that anybody is going to speak to that. But in the recent amendment, the statute also recognizes the public policy of Illinois to ensure that patients receive timely access to the information in medically appropriate care, which is what Justice Hutchinson alluded to. So if we went with your strict interpretation, wouldn't we be ignoring the other interests that the legislature talks about? No. Well, first of all, that statement and the public policy that was adopted in the amendment was well after the facts of this case. If it was recently adopted by the general assembly, then it's now the public policy. Again, both of those. That amendment is currently enjoined, and I hope that it will be permanently enjoined. But that interest isn't there in terms of in relationship to this case. Even without that, though, even without the amendment, what's the purpose of the health clinic? It's to provide services to persons who can't maybe otherwise go to private physicians or whatever the case may be. And so the employer here has not only a responsibility but a purpose in serving the public in all of their health care needs. It's a critical purpose, and it's one that Nurse Mendoza was all about and has been about for 18 years. And I think we can recognize that purpose while we're still respecting the right. Because the general assembly is not saying anything against that purpose or that interest. All it's saying is in order to accomplish the purpose as a health care clinic to provide these services, what you can't do is you can't force a nurse or a doctor or a pharmacist to do this against her conscience. You can find other nurses. You can find other doctors and other pharmacists. If a nurse, doctor, pharmacist, or health care professional refuses, and I think my opposing counsel says this allows a path to a veto. Well, the path to the veto was provided by the general assembly. This is not something that Nurse Mendoza invented. She can read a statute that says that she doesn't have to do this if it's against her conscience. And as a result, I think that that interest is certainly, we would agree, is protectable. You shouldn't have to do that. If you had an office where everybody invoked that right, well, what would happen to the business? That's not the case here. Right. And I think to Justice Hudson's question, because we have this case, which I think is clearly not the case, but we have to answer these questions. We have to interpret a statute that isn't going to produce observed results irrespective of what the facts are here. Right. And the way that Rule 308 appealed, we have to deal with it in a general context. So what's your answer to that? My answer to that is the way the statute is written is that a health care employer, if all of their employees come to them and say, we can't do this as a matter of conscience, they have to find new employees. That's the result of this. Because they can't discriminate them in the context of. . . They have to hire new employees while the other employees do what? Yeah. Well, I mean, that's. . . I can't read the plan. . . That's what I'm grappling with. The transfer. . . Well, it's a difficult situation. I can only deal with what the plain language says, and that's really where it is. And so the fallback position, to Your Honor's point, and what I think to reading discrimination as a modifier of the transfer, I think that's what you can do. And again. . . We can do that. Well, my argument is that the transfer, per se, is a violative. . . Okay. Theoretically. Well, if transferring, per se, is a violation, hiring, per se, must be a violation. Or not hiring must be a violation. Promotion. Promotion, anything. I think that's why it's easier to see the discrimination as modifying those things. And I think one of the other things that I think is important to touch on in the time that I have remaining is that when courts are presented in Illinois with a term that's not defined, the first inclination or reaction isn't to say, well, let's go look at what the federal courts say our Illinois statute is. It is to go to the dictionary. Which term isn't defined? Well, opposing counsel believes that discrimination is not defined, and we believe it is based on the illustrative examples. And I think it's also important to note that the Conscience Act protects not only against discrimination but also against disqualification or coercion. And I want to focus on the coercion aspect because we can get to the Ripper argument, too, if we haven't gotten to that point yet. Coercion is prohibited in both. It's a coercive choice in the Religious Freedom and Restoration Act, and it's a coercive coercion under the Conscience Act. And this case presents the quintessential example of a coercive choice. You do it all or you do it nothing is what Nurse Mendoza was talking about. That is exactly the case in the Moore Fitz cases where the pharmacists were told you either provide the contraception or you get out of pharmacy. The Dick Snyder case recognizes that that's the hallmark of a substantial murder. And we have no ñ there's absolutely ñ while we may have a dearth of case law with respect to the Conscience Act, we have tons of cases. This Court has a recent case in the Latin Kings case that was referred for a case. And so we can look to that. And in no ñ there's no mention of Title VII or the reasonable accommodation provision or defense that employers have. All you look to is you go through the guaranteed test. Ripper says we're guaranteeing the test. The compelling interest test is going to be applied. First, we establish the substantial burden. All we need to do there is show the coercive choice. That is a matter of fact. That's all a plaintiff needs to do. Then we go into the balancing as Justice Hutchinson said, which is with respect to the compelling government, compelling governmental interest, which has to be applied to the person. Because we recognize that health clinics have compelling interests to provide the services. As I ask the opposing counsel, are you aware of any cases that have applied the Title VII analysis to the ñ where the catch is at? No. There aren't. And in fact ñ So this is sort of a case of first impressions, isn't it? Well, I ñ our argument is no, because the ñ the understanding in the Munn statements case is both had Title VII and the Conscience Act claims. And that was just on pleadings in terms of motions to dismiss. And in that case, the Court went through the analysis of Title VII, separately went through the analysis of the Conscience Act, and the elements were not the same. And the elements are not the same because the statutes are written differently. There's expressed provisions. And this Court, opposing counsel, has provided no authority upon which to import VII into the statute. And that's exactly what Judge Doherty rightly held. He just said it's not the role of the Court to engraft these provisions onto it, no matter how much the defendants believe it's the gold standard and how much we ñ how much help we can get by looking to Title VII. The answer is if legislature wanted to do that, they certainly could have, right? They certainly could. And I agree, Your Honor. And the other thing I think ñ Well, then back to a question I had asked earlier of counsel, this is not a constitutional case, but you're talking about a constitutional-type analysis, aren't you? Under the RFRA, clearly ñ yes, and if I may finish? Yes, sir. Under the RFRA analysis, it's clearly a balancing ñ but it harkens back to the pre-employment division versus pre-exercise analysis, which Sherbert v. Verner is actually an employment case. So all we need to show is the person of choice, and then it's on the burden of proof And that would ñ and you're saying that is what you think the Conscience Act should dictate at this point? No. And that's actually addressed in the Moore-Fitts case. The appellate court, in reviewing the injunction, the ACLU argued ñ This was the Fourth District case. Yeah, the Fourth District. Because there are two of them. Yeah, yeah. Sorry. It's hard to get ñ untangle that. The appellate court was presented with this. So the ACLU came and said the Conscience Act, wow, that's way too strict. We have to have some type of balancing. So please import RFRA's compelling interest test into the Conscience Act. And the appellate court, the Fourth District, rejected that and said, no, there ñ that is ñ this is not the context. Yes, under RFRA, we'll have that balancing. Under the Conscience Act, we don't have that balancing. And so it rejected the ACLU's argument to import RFRA. So without that ñ Well, they found it was overbroad. But did they ñ the appellate court, Justice Connector, that it was overbroad. But did he say that we can't balance? Yes. And it's the More Fitz, Fourth District case. And I can ñ I can provide those assignments. Well, I have it sitting here. And I was just looking to see where he said you can't balance. I mean, I know what they decided. And primarily, it was that the ñ the injunction, I guess, was too broad. Well, it was upheld under the Conscience Act. And so ñ and that ñ and that's ñ I think that's why it's not dicta. Because it was part of the analysis. Had it been relevant and had the court said, yes, we're importing the compelling interest test from RFRA, it would have then gone through that balancing analysis. It would have had to in order to issue the injunction or to uphold the injunction. Because it didn't even go into it, I believe that the court rightly rejected the ACLU's argument to bring in ñ to play the RFRA compelling interest balancing. All right. Thank you. All right. Mr. Anthus. Thank you, Your Honors. I just have a couple quick points, unless you all have any questions for me. Counsel talked a bit about, in terms of the Conscience Act, not prohibiting simply discrimination, but also, as he discussed, disqualification, coercion. The certified questions before you address claims of discrimination under the Conscience Act, not claims of disqualification and coercion, for the fact that the plaintiff's complaint in this case alleges that the plaintiff was ñ that she was discriminated against because of her consciously held beliefs in violation of the Conscience Act. So we are clearly in the world of a claim of not coercion or disqualification, but a claim of discrimination in the employment context. One thing that I just wanted to clear up from the record, because certain things have come up about the transfer, and whether there was the authority for the transfer, what's undisputed is the plaintiff quit. The plaintiff quit her job. Well, that wouldn't have any bearing on our answering the certified questions, would it? It may or may not. I just wanted to make sure that that fact was brought to Your Honor's attention. And, you know, one thing that's ñ it's not directly in response to anything Counsel said. If you want to cut me off, I understand. But I think to the greater point that we've discussed about avoiding absurd results and making sure we achieve a fair and just result, a fair and just reading of the statute, to bring up something Justice Hutchinson mentioned, it's something you need to keep in mind when answering these questions. This question isn't directly before the court, but what do we do in the case of hiring? What if we have a clinic who puts out a job posting for an OB-GYN who's qualified to dispense birth control? Well, wouldn't it be different if ñ isn't it different, substantially different, if there's an ad advertised versus the woman who's been in the job for 18 years and then the job duty changes? Well, according to Counsel, just as the transfer is in and of itself not unconstitutional but a violation of the statute, under his logic there, hiring of someone who is otherwise qualified to do the job but who would come in and say, I am an OB-GYN, I am qualified to do all these things. But I won't do it. But I won't do it because ñ Do you think they're going to hire her? Well, according to Counsel, it would violate the statute not to. And that's the tension that we're working with here. And this is not an easy case, and I don't ñ You don't envy us? I don't envy ñ that's what I was looking for. I don't envy the decision your honors have to make. I couldn't find the word, Judge, but that's it. So if you all have anything else, if not, I will see the rest of my time. Thank you. All right, Counsel, thank you very much this morning for traveling here. Thank you for your argument. We will take the matter under advisement. We will stand in recess at this time to allow another case to be prepared.